[Cite as *Yormick v. King David Post Acute Nursing & Rehab., L.L.C.*, 2026-Ohio-1776.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ILONA YORMICK,                               :

    Plaintiff-Appellee,                  :

                                 No. 115662

    v.                                   :

KING DAVID POST ACUTE NURSING   :
& REHABILITATION LLC, ET AL.,

                                 :

    Defendants-Appellants.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-108123

---

### *Appearances:*

Haber LLP, Richard C. Haber, Natalie D. Davis, and Lindsey K. Self, *for appellee*.

Frantz Ward LLP, Ryan T. Smith, Angela D. Lydon, and Katherine E. McLaughlin, *for appellant* King David Post Acute Nursing & Rehabilitation LLC.

SEAN C. GALLAGHER, J.:

{¶ 1} Defendant-appellant King David Post Acute Nursing & Rehabilitation, LLC ("King David"), appeals from the trial court's decision denying

its motion to stay pending arbitration. Upon review, we affirm the trial court's ruling.

{¶ 2} On December 3, 2024, plaintiff-appellee Ilona Yormick filed a complaint against King David, Outcome Healthcare, LLC ("Outcome"), Diane Liliestedt, Tara Miller, and unnamed defendants.[1] Yormick alleged that King David and Outcome "are a single employer or integrated enterprises" that employed her. She raised claims of age discrimination and retaliation arising from her employment and the termination of her employment, which occurred on July 2, 2024, as alleged in her complaint.

{¶ 3} On February 13, 2025, King David, Liliestedt, and Miller filed an answer to the complaint. Outcome filed a motion to dismiss pursuant to Civ.R. 12(B)(2) for lack of personal jurisdiction, which was opposed by Yormick. Outcome submitted as an exhibit to its reply brief an affidavit of H. Jason Black, the nursing home administrator for King David, who submitted "a true and accurate copy of the documentation that [Yormick] executed in connection with her onboarding for King David," which documents included an arbitration agreement. After the trial court denied Outcome's motion to dismiss, Outcome filed an answer to the complaint.

{¶ 4} In the meantime, the trial court held a case-management conference and scheduled discovery and dispositive-motion deadlines, as well as pretrial and trial dates. Between March and July 2025, Yormick propounded her first set of

---

[1] The unnamed defendants were designated as John/Jane Doe 1-5 and ABC Corporation 1-2.

discovery requests to the defendants, supplemental requests were sent, email exchanges occurred between counsel regarding discovery, extensions were requested by the defendants, King David and Outcome collectively submitted responses, Yormick propounded a second set of discovery requests to the defendants, and deposition dates were discussed.

{¶ 5} King David, Outcome, Liliestedt, and Miller were all represented by the same counsel in the case. There was a substitution of counsel that occurred for these defendants, as well as the appearance of additional counsel for them. On July 21, 2025, which was more than a year after Yormick was terminated from her employment and seven and a half months after Yormick's complaint was filed, King David filed a motion to stay pending arbitration and also filed a motion to stay discovery pending a ruling on the motion to stay or alternatively to extend the discovery deadline. Yormick opposed those motions. A pretrial was held on August 12, 2025, at which all parties appeared through counsel.

{¶ 6} On September 25, 2025, the trial court issued a detailed journal entry in which it denied King David's motion to stay pending arbitration, denied the motion to stay discovery as moot, and granted an extension of the discovery deadline. In denying King David's request to stay the matter pending arbitration, the trial court ruled that the request "is untimely pursuant to the terms of the arbitration agreement itself." The trial court referenced Section E of the arbitration agreement, which sets forth a "Time Limitation for Claims Arbitration," and determined that King David's request to stay the matter pending arbitration was

"clearly barred by the one-year limitation contained in the agreement." The trial court also effectively determined waiver occurred and set forth the factual basis for this determination in its decision. The trial court noted relevant dates in the matter, recognized King David's participation in the case, observed that the arbitration agreement was submitted with the affidavit of the administrator for King David, considered the delay in asserting a right to arbitration, and found from the totality of the circumstances that "the defendants have acted inconsistently with their right to arbitration."

{¶ 7} King David timely appealed. King David claims that (1) the trial court erred by interpreting and relying on the arbitration agreement's one-year limitations clause, and (2) the trial court abused its discretion by concluding King David waived its right to arbitration.

{¶ 8} When reviewing the trial court's decision granting or denying a stay of proceedings pending arbitration pursuant to R.C. 2711.02(B), our standard of review varies based on the nature of the issues raised. *Crosscut Capital, LLC v. DeWitt*, 2021-Ohio-1827, ¶ 14 (10th Dist.). We review issues involving contractual interpretation or statutory construction de novo. *Id.* Generally, we apply an abuse-of-discretion standard to the waiver issue because of the fact-driven nature of the inquiry. *See id.* at ¶ 15; *Gertson v. Parma VTA, L.L.C.,* 2020-Ohio-3455, ¶ 14 (8th Dist.), citing *Vining v. Logan Clutch Corp.*, 2020-Ohio-675, ¶ 10 (8th Dist.).

{¶ 9} Insofar as King David presents arguments that were not raised in the trial court, we will not address issues raised for the first time on appeal. *See Murfey*

*v. Muth*, 2025-Ohio-1184, ¶ 10 (8th Dist.), citing *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10. Further, we need not and will not address issues that were not addressed by the trial court in the first instance. *See Leaffilter N., LLC v. Dunphy*, 2025-Ohio-3260, ¶ 14 (9th Dist.).

{¶ 10} Under its first assignment of error, King David argues that the trial court erred as a matter of law by deciding the timeliness of its arbitration demand under the arbitration agreement's time-limitation clause. King David asserts that the timeliness of an arbitration demand is a question of procedural arbitrability reserved to the arbitrator once the court determines that the parties agreed to arbitrate the dispute. The Supreme Court of Ohio, in a case where a legitimate dispute existed over whether an arbitration demand was timely, recognized the general observation that "matters regarding procedural questions growing out of the parties' dispute and bearing on its final disposition are best left to the determination of the arbitrator." *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 669 (1998), citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). Although Yormick claims the cases cited by King David in support of its argument are distinguishable and maintains that the agreement herein is clear and that no dispute exists, we do not find either party has provided authority directly on point. We recognize that some courts have found the issue of whether a party seeking arbitration of a claim has failed to comply with specific time limits contained in the arbitration agreement is presumptively a matter for the arbitrator, rather than the court, to decide. *See Alliance Health & Life Ins. Co. v. Am. Natl. Ins. Co.*, 2022

U.S. App. LEXIS 20300, *5-6 (6th Cir. July 22, 2022). Though there may be instances where a court may pass upon the time-limitation question, we are not convinced whether this is such a case. Regardless, we need not definitively determine the time-limit issue because our review of the trial court's determination that King David waived its asserted right to arbitration is dispositive of this appeal.

{¶ 11} Pursuant to R.C. 2711.01(A), a provision in a written contract for arbitration of a controversy arising out of the contract "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." When an issue is referable to arbitration under the contract, a party may seek a stay pending arbitration under R.C. 2711.02(B), which states as follows:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, *provided the applicant for the stay is not in default in proceeding with arbitration.*

(Emphasis added.)

{¶ 12} "The right to arbitration may be waived just like any other contractual right." (Cleaned up.) *Blue Technologies Smart Solutions, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 2020-Ohio-806, ¶ 13 (8th Dist.). "'To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right.'" *Id.*,

quoting *Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 25. "A party may explicitly waive its right to arbitration or may implicitly waive its right by failing to assert it or by participating in litigation to such an extent that its actions are 'completely inconsistent with any reliance' on this right, resulting in prejudice to the opposing party." *Bass Energy Inc. v. Highland Hts.*, 2010-Ohio-2102, ¶ 33 (8th Dist.), quoting *Gen. Star Natl. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002). Ohio has a strong public policy favoring arbitration, and a party's waiver of a right to arbitration will not lightly be inferred. *See Gertson*, 2020-Ohio-3455, at ¶ 16.

{¶ 13} This court has outlined several factors that may be considered in determining whether the totality of the circumstances supports a finding of waiver, including the following:

> (1) whether the party seeking arbitration invoked the jurisdiction of the trial court by filing a complaint, counterclaim, or third-party complaint without asking for a stay of proceedings; (2) the delay, if any, by the party seeking arbitration in requesting a stay of proceedings or an order compelling arbitration; (3) the extent to which the party seeking arbitration participated in the litigation, including the status of discovery, dispositive motions, and the trial date; and (4) any prejudice to the nonmoving party due to the moving party's prior inconsistent actions.

*Id.* at ¶ 17, citing *Academic Support Servs., L.L.C. v. Cleveland Metro. School Dist.*, 2013-Ohio-1458, ¶ 8. This is not a "four-factor test" as suggested by King David. "When determining waiver, the 'essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate.'" *Debois, Inc. v. Guy*, 2020-Ohio-4989, ¶ 24 (8th Dist.), quoting

*Phillips v. Lee Homes*, 1994 Ohio App. LEXIS 596, *8 (8th Dist.). "Waiver of the right to arbitration depends on the facts of each particular case[,]" and the trial court is in the best position to assess whether a party acted inconsistently with its right to arbitrate. *Philips* at *10-11. Further, no one factor controls, and trial courts have discretion to weigh the factors considered in determining whether the totality of the circumstances support a finding that the party acted inconsistently with the right to arbitrate. *See Murfey*, 2025-Ohio-1184, at ¶ 16 (8th Dist.).

{¶ 14} An "abuse of discretion" means that the trial court's ruling "is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). As this court has previously recognized, the abuse-of-discretion standard "'is a high standard to satisfy and we cannot simply substitute our judgment for that of the trial court.'" *Adkins v. Women's Welsh Club of Am. Found.*, 2021-Ohio-1084, ¶ 16 (8th Dist.), quoting *Beegle v. S. Pointe Hosp.*, 2011-Ohio-3591, ¶ 15 (8th Dist.). Furthermore, prior decisions based on claims of waiver do not create a standard demanding a particular outcome but instead demonstrate a range of decisions based on the weighing of factors by the trial court. *See Murfey* at ¶ 19.

{¶ 15} In this case, the record shows that Yormick demonstrated that King David knew of its right to arbitration. As argued by Yormick and found by the trial court, on March 13, 2025, Outcome filed with a reply brief the affidavit of H. Jason Black, the administrator for King David, which affidavit was submitted with onboarding documents that Yormick executed in connection with her employment,

including the arbitration agreement at issue. This evinces that the arbitration agreement was in the possession of King David. As this court has recognized, "'[A] contracting party is presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause.'" *Blue Technologies,* 2020-Ohio-806, ¶ 16 (8th Dist.), quoting *Garcia v. Wayne Homes*, 2002-Ohio-1884, ¶ 64 (2d Dist.).

{¶ 16} Also, upon considering the totality of the circumstances presented, the trial court found "the defendants have acted inconsistent with their right to arbitration." King David argued in its motion that the employment-related claims raised by Yormick fell within the scope of the arbitration and that neither King David nor its codefendants had filed a claim against the plaintiff, engaged in any motion practice directed at the merits of the suit, or sought discovery from Yormick. King David further asserted that only a few months had passed since the action was brought and its answer was filed, that no trial-related deadlines were imminent, and that Yormick would not be prejudiced. Further, King David asserted that there was a substitution of counsel for the defendants, and their new counsel promptly filed the request to stay pending arbitration upon learning of the applicability of the arbitration agreement. However, Yormick showed there was a delay of almost a year from the time she provided notice of her intent to take legal action until King David asserted a right to arbitrate. Yormick argued that in the seven and a half months since the action was filed, the defendants had consistently and actively engaged in the litigation process, including filing answers, the filing of the motion to dismiss by

Outcome along with the affidavit by King David's administrator and attached onboarding documents, participating in the case-management conference, and engaging in the discovery process through correspondence and providing discovery responses, all without asserting any right to arbitration. Additionally, Yormick asserted that King David was in possession of the arbitration agreement and that Outcome and King David were represented by the same counsel in the matter. Other arguments were made by the parties.

{¶ 17} In considering the totality of the circumstances presented, the trial court recognized that Yormick was terminated on July 2, 2024, the defendants were notified on July 29, 2024, that Yormick had retained counsel and intended to take legal action, that Yormick filed a charge of discrimination with the Ohio Civil Rights Commission on August 9, 2024, that Yormick filed the instant lawsuit on December 3, 2024, and that the defendants participated in the litigation since that time without seeking to enforce the arbitration agreement.[2] Although the trial court noted the filing of the motion to dismiss for lack of personal jurisdiction by Outcome, King David's active participation in the litigation is otherwise supported by the record. The trial court further observed that a copy of the arbitration agreement was submitted with the affidavit of King David's administrator on March 13, 2025, and no right to arbitration was asserted until the filing of King David's motion to stay.

---

[2] "Although it is not necessary to affirmatively plead arbitration as a defense in order to avoid waiver, the failure to plead such right may be considered as a factor under the totality of the circumstances." *Crosscut Capital, LLC*, 2021-Ohio-1827, at ¶ 23 (10th Dist.).

Though the trial court misstated that it had been "almost two years" since the defendants were notified of the dispute before the request to stay pending arbitration was filed, the trial court was aware of the actual delay that occurred and reiterated that it was not until July 21, 2025, that King David sought to assert its right to arbitration. Also, contrary to King David's argument, the delay was not the sole basis for the trial court's decision. Further, the trial court did not find the defendants' substitution of counsel in the matter excused the delay in asserting its rights under the arbitration clause. Though a substitution of counsel occurred, as the trial court aptly recognized in distinguishing a case cited by King David, "here, at no point were the defendants, commercial entities and their agents or employees, without counsel" in the action. The trial court's determination that the defendants acted inconsistently with their right to arbitration was not arbitrary, unreasonable, or unconscionable.

{¶ 18} Upon our review, we find that there was no abuse of discretion by the trial court regarding the waiver issue. We are not persuaded by any other argument raised by King David. King David's second assignment of error is overruled.

{¶ 19} Finally, we are cognizant that the trial court's denial of King David's motion to stay pending arbitration was made upon determinations of untimeliness and waiver and that the trial court did not make any determination regarding Yormick's alternative argument asserting unconscionability of the arbitration

agreement.  We shall not determine the issue in the first instance, and we need not consider the issue to affirm the trial court's decision.[3]

{¶ 20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EMANUELLA D. GROVES, P.J., CONCURS;
MARY J. BOYLE, J., CONCURS (WITH SEPARATE OPINION)

MARY J. BOYLE, J., CONCURRING:

{¶ 21} I concur with the majority's decision affirming the trial court's denial of King David's motion to stay pending arbitration.  I further concur with the majority's decision to decline to address issues that were not addressed by the trial court in the first instance and to not determine the time-limit issue because King David's waiver of its right to arbitration is dispositive of this appeal.  I write

---

[3] We note also that, arguably, because King David did not raise an assignment of error regarding the unconscionability issue and no appeal was filed by Yormick on the issue, it has been forfeited for review.

separately, however, to distinguish *Morris v. Morris*, 2010-Ohio-4750 (10th Dist.), a case that King David contends is directly on point.

{¶ 22} According to King David, the Tenth District Court of Appeals in *Morris* found that non-merits jurisdictional filings, such as a motion to dismiss for lack of personal jurisdiction, do not constitute waiver of the right to arbitrate because this type of motion is a procedural tool testing the sufficiency of a pleading. King David contends that the trial court's waiver finding, in the matter before us, relied in substantial part on Outcome's Civ.R. 12(B)(2) personal jurisdiction motion, not by King David, the party seeking arbitration, and this motion is the type of non-merits motion that the *Morris* Court held is consistent with preserving arbitration. I disagree and find *Morris* distinguishable.

{¶ 23} In *Morris*, the analysis focused on whether affirmative defenses are waived if not raised in the initial pleading or an amended pleading. One of the appellants in *Morris* argued that the trial court erred in refusing to allow him to assert the new affirmative defense of arbitration in response to the appellees' amended pleadings. The trial court concluded that the appellant waived the defense because he did not raise it in his initial responsive pleading. The *Morris* Court reversed the trial court's judgment and remanded the matter for the court to enter a stay of proceedings pending arbitration. The *Morris* Court found that by filing amended pleadings, the appellees opened the door for the appellant to raise new affirmative defenses in his responsive pleadings. *Id.* at ¶ 32. The court further found that the right to arbitrate, as protected by R.C. 2711.02, is not a Civ.R. 8(C)

affirmative defense and, thus, the appellant's failure to include it in his initial responsive pleading did not result in waiver. *Id.* Ultimately, the *Morris* Court concluded that a request to file a cross-claim was not inconsistent with the contractual right to arbitrate, because the cross-claim was never actually filed and because the proposed cross-claim would not have been subject to arbitration. *Id.* at ¶ 30-32. The motion to stay arbitration was filed within the stipulated time to file a responsive pleading to appellees' amended counterclaims and cross-claims and after a previous non-merits motion to dismiss was denied. *Id.*

{¶ 24} Whereas in this case, the question is not solely whether King David waived the defense of the right to arbitrate by not raising it in its original answer. The question here is whether, during the course of litigation, King David acted inconsistently with its right to arbitrate. While resolving that question includes consideration of whether King David omitted the arbitration defense from its original answer, the absence of the defense merely contributes to the overall analysis. Here, there are multiple factors supporting the conclusion that King David acted inconsistently with its right to arbitrate, including King David's participation in the litigation since Yormick filed her complaint and the attachment of the arbitration agreement with the affidavit of King David's nursing home administrator to Outcome's March 2025 reply in support of its motion to dismiss. Additionally, King David did not move to assert its right to arbitrate until seven and a half months after Yormick's complaint was filed. Together, all these factors distinguish this case from *Morris*.